Scarborough & Ely, of Abilene, for plaintiffs in error.

J. M. Harris, of Snyder, and Wm. F. Koch, of San Antonio, for defendants in error.

## McMULLAN et ux. v. SAN ANTONIO JOINT STOCK LAND BANK OF SAN ANTONIO.

### No. 1344.

Court of Civil Appeals of Texas. Eastland.

Dec. 7, 1934.

Rehearing Denied Jan. 18, 1935..

HICKMAN, Chief Justice.

This was an action in trespass to try title to 4,373 acres of land instituted by defendant in error, San Antonio Joint Stock Land Bank of San Antonio, against plaintiffs in error, R. L. McMullan and wife, Mary L. McMullan. Defendant in error acquired title to the land under a sale by the trustee in a deed of trust executed by the plaintiffs in error, and it was stipulated upon the trial that plaintiffs in error were the common source of title, and that the sale made under the powers contained in the deed of trust was regular and valid to all the property, save and except 200 acres which plaintiffs in error claim as a homestead. As to this 200-acre tract specifically described in the answer, it was contended that the deed of trust was void, and the only question presented below was the homestead question. That is likewise the only question presented here. To the answer of plaintiffs in error setting up a claim of homestead, the defendant in error, by supplemental petition, pleaded, among other defenses, that the plaintiffs in error were estopped from asserting any homestead claim to this

200-acre tract because (a) it was induced to take up a loan made to the McMullans six years before it made its loan by an affidavit executed by the McMullans to it that their homestead had never been on the property involved in the suit, and by the further fact that in the deed of trust to secure its loan to them, they designated property owned by them in the town of Snyder as a homestead; (b) the McMullans had theretofore executed various instruments and designations, all of which were of record, and all of which showed their homestead to be a certain house and lot owned by them at the time in the town of Snyder; (c) that the loan made by it to the McMullans was for the purpose of paying off and discharging a prior lien on this land, and it was subrogated to all rights of the prior lienholder; that after this prior lien was fixed, the McMullans sold the property, and in the deed the purchasers assumed the original loan as a part of the consideration; that later the McMullans repurchased the same, and, by the terms of the deed, accepted title subject to the outstanding indebtedness; (d) that the McMullans made such use of two or more pieces of property as to make the question of which was their homestead dependent upon their own intention, and having induced defendant in error to make the loan by declaring other property to be their homestead, they are now estopped from asserting that the 200 acres claimed was, and is, their homestead.

After all evidence had been introduced, the trial court instructed the jury to return a verdict in favor of defendant in error, who was the plaintiff below, and, on the verdict returned in accordance with the instruction, judgment was rendered that defendant in error recover of plaintiffs in error title to and possession of all the land described in their petition, including the 200 acres in controversy. The judgment recites, as a reason for giving the peremptory instruction, that the court was of the opinion that, under the undisputed evidence, defendants were estopped from asserting any homestead right to the 200 acres of land claimed by them. We concur in this conclusion for the reasons hereinafter set forth.

On January 3, 1921, plaintiffs in error borrowed $40,000 from F. B. Collins Investment Company, for which they executed their bond or note. To secure the payment of this indebtedness, they executed a deed of trust, and at the same time signed and acknowledged a homestead designation, in which they designated a certain house and lot in the town of Snyder as their homestead. At that time they had owned this house and lot about twenty years, and had owned the ranch for more than twenty years. For many years Mrs. McMullan and their children had occupied this town property during the school term, but Mr. McMullan had spent most of his time on the ranch, where the family spent their vacations between sessions of school. After this deed of trust to F. B. Collins Investment Company was executed, the McMullans by general warranty deed, conveyed the entire ranch property, including the 200 acres now claimed as their homestead, to Verne McMullan and Connie McMullan, for a recited consideration of $82,000 as follows: $2,000 cash, $40,000 in notes, and the assumption by the vendees of the $40,000 loan to F. B. Collins Investment Company. Several years thereafter, and on December 3, 1926, Mr. and Mrs. McMullan made application to defendant in error for a loan to take up this old indebtedness, and on the next day, to wit, December 4, 1926, Verne and Connie McMullan deeded the ranch back to R. L. McMullan, one of the plaintiffs in error, and as a part of the consideration for that conveyance, the vendee accepted title to the premises subject to the payment of the outstanding indebtedness against same. In the sworn application of December 3, 1926, made by R. L. McMullan to the defendant in error requesting a loan of $45,000 on the ranch property, it was stated that the purpose was to take up an existing loan held by Missouri State Life Insurance Company, assignee of F. B. Collins Investment Company, amounting at that time to $42,600, the balance to be used in stocking the ranch. In this application, McMullan declared, under oath, that his homestead consisted of the house and lot in the town of Snyder. The loan of $45,000 was granted, and in the deed of trust executed to secure defendant in error in the payment thereof, it was recited that the note was executed in renewal and extension of, and in substitution for, the note of January 3, 1921, in the principal sum of $40,000, payable to the order of F. B. Collins Investment Company, which said note had theretofore been transferred to the Missouri State Life Insurance Company, and that the balance of the proceeds of the loan made by defendant in error would be applied to the purchase of equipment and live stock, and to provide working capital for farming operations on the land. It was further stipulated in this deed of trust that the defendant in error was subrogated to all the rights, liens, remedies, equities, superior title,

and benefits held, owned, possessed, or enjoyed at any time by any owner or holder of said Collins' note. On the same day that this deed of trust was executed, plaintiffs in error made affidavit that this ranch property was not then, and had never been, their homestead. The proceeds of the $45,000 loan made by the defendant in error to plaintiffs in error were all used to discharge the prior existing lien and tax liens on the land, except about $1,630, which was paid to plaintiff in error R. L. McMullan.

Passing over for the present the question of whether plaintiffs in error could have successfully pleaded the invalidity of the lien on the 200 acres claimed as a homestead as against the F. B. Collins Investment Company, and assuming for the present that they could have done so, it does not follow that such claim could be interposed against defendant in error for two reasons: In the first place, regardless of the validity of the original lien in favor of F. B. Collins Investment Company, when Verne and Connie McMullan purchased this land, and in the deed by plaintiffs in error to them, recognized the validity of this lien and assumed the payment thereof, it thereby became a valid lien as a part of the consideration for the deed. The lien having thus become fixed on the land in the hands of Verne and Connie McMullan, and again reaffirmed and fixed against plaintiff in error R. L. McMullan in the deed back to him, wherein he took title subject to such indebtedness, the question of its original invalidity becomes immaterial. "If the purchaser takes the property 'subject' to the lien, then he agrees that the lien is valid and cannot dispute it thereafter. Of course, if the purchaser expressly assumes, or uses language clearly indicating such intention, to pay, then not only does the lien exist, but the purchaser becomes personally liable as well." Wooten Motor Co. v. First Bank of Swenson (Tex. Com. App.) 281 S. W. 196, 197. To the same effect is Rice-Stix Dry Goods Co. v. First National Bank of McGregor (Tex. Com. App.) 231 S. W. 386.

In the second place, defendant in error was not charged with knowledge of the actual status of the property at a time several years prior to its transaction with plaintiffs in error. In their application to it for a loan to take up the F. B. Collins Investment Company loan made several years prior thereto, the plaintiffs in error stated that this property had never been their homestead. Various and sundry recorded designations covering a period of years verified this statement. That was a declaration that this property

was not their homestead at the time the lien was created in favor of F. B. Collins Investment Company. Defendant in error had a right to rely upon this statement of a fact as to a condition existing prior to that time, and plaintiffs in error could not be heard to say that the statement made by them as to this prior existing fact was false. This question is fully discussed and the authorities analyzed in First Texas Joint Stock Land Bank v. Chapman (Tex. Civ. App.) 48 S.W.(2d) 651. No further citation of authorities seems necessary.

It would seem that no further reasons need be advanced for affirming the judgment of the trial court, but there is another well-established rule which would lead to that result. Plaintiffs in error are estopped to assert the invalidity of the original lien. At the time F. B. Collins Investment Company made the loan to plaintiffs in error, the latter then owned other property than that offered as security, which they might have claimed as their homestead. In addition to this residence in Snyder, which they had owned for about twenty years, and which had been occupied for most of the time by Mrs. McMullan and their children, they also owned a residence in Dallas, purchased by them at a cost of $18,000 some two years prior to the date of this loan. It cannot be said, as a matter of law, that plaintiffs in error could not have set up at that time a homestead claim as to any one of these three pieces of property. Certainly it could not have been held, as a matter of law, that they had abandoned the Snyder property as a homestead. First National Bank in Stamford v. Jones (Tex. Civ. App.) 59 S.W.(2d) 1103. Neither could it be said, as a matter of law, that they had not impressed the Dallas property with the homestead character. Purdy v. Grove (Tex. Civ. App.) 35 S.W.(2d) 1078. That being true, this case is governed by the general rule stated in Sanders v. Life Ins. Co. of Virginia (Tex. Civ. App.) 57 S.W.(2d) 327, 330, in this language: "* * * Where the facts respecting two places are such that the homestead character will attach to either to the exclusion of the other, according as the husband and wife intend, a declaration by the spouses of their intention in this respect will estop them from disputing the truth of the declaration as against one who acquires a deed of trust in reliance upon such declaration."

This rule governed the decisions in the following cases: Parrish v. Hawes, 95 Tex. 185, 66 S. W. 209; Carstens v. Landrum (Tex. Com. App.) 17 S.W.(2d) 803; Purdy v. Grove (Tex.

Civ. App.) 35 S.W.(2d) 1078; First Texas Joint Stock Land Bank v. Chapman (Tex. Civ. App.) 48 S.W.(2d) 651; Dallas Bldg. & Loan Ass'n v. Patterson (Tex. Civ. App.) 48 S.W. (2d) 657; Life Insurance Co. of Virginia v. Weatherford (Tex. Civ. App.) 60 S.W.(2d) 883. This court reaffirmed the rule in Farmers' Nat. Bank of Dublin v. Carmony, 62 S.W.(2d) 1115. We do not find it necessary to lengthen this opinion by detailing all of the many facts contained in the record showing the applicability of the rule in the instant case, but we do state that the facts more certainly call for its application than did the facts in the cases of Purdy v. Grove, supra, and Life Insurance Company of Virginia v. Weatherford, supra, each of which was decided by this court, and in each of which a writ of error was refused.

For all of the reasons above assigned, plaintiffs in error are estopped from asserting their homestead claim, and the trial court did not err in so holding. Its judgment will accordingly be affirmed.